**REEVES, Appellant, v. BOARD OF REVIEW, BUREAU OF UNEMPLOYMENT COMPENSATION et al., Appellees.**

Common Pleas Court, Cuyahoga County.

No. 643950. Decided April 8, 1954.

Davis, Davis & Handelman, Cleveland, for appellant.

C. William O'Neill, Atty. Genl., Clarence E. McLeod, Asst. Atty. Genl., Columbus, for appellee.

## OPINION

By HANNA, J.

This cause is before the Court a second time on appeal from the decision of the Board of Review of the Bureau of Unemployment Compensation, the decision of its referee having become the final decision of the Board upon the disallowance of appellant's application to institute a further appeal before the Board.

Subsequent to this Court's ruling on December 30, 1953, the administrator of the Bureau of Unemployment Compensation moved to be made a new party appellee and to set aside the judgment and order of the Court and for a new trial of this cause. Both motions were granted. The administrator was made a party appellee and the case was restored to the list for trial.

The decision of the Board of Review was to the effect that the appellant "quit work without just cause." The issue presented by this appeal is.—"Did the plaintiff voluntarily quit her work without just cause?"

The appellee further contends that there is no basis upon which a reversal of the decision of the Board of Review can be founded.

At the outset it should be borne in mind that unemployment compensation is not to be regarded as a give-away program. It is in the nature of insurance for which one qualifies by reason of being employed and which is financed by contributions made to the fund during the periods of employment and whose benefits are payable only to those who meet the test of eligibility. But the provisions denying the worker the right to receive benefits should not destroy the underlying purposes of the legislation conferring the right, and to that end such legislation should be liberally construed.

The facts essential to a determination of the issue as to whether or not plaintiff quit without just cause as here presented are:

Claimant was classified as a machine operator working on a first shift—a daytime employment. No work being available in her department on April 21, 1951, she was offered a transfer to another department for similar work on the third shift— a nighttime employment commencing at 10:30 P M. She refused, stating that she was afraid to walk alone at night as would be required passing to and from her home and place of employment. Her refusal was interpreted by the, Bureau of Unemployment Compensation as a voluntary quitting of her work without just cause and it was ordered that all base period wages be excluded in computing benefits and that claimant's benefit rights be suspended.

In support of her contention that the cause of her refusing the transfer was a just one, appellant cited her concern for her own safety in traveling to and from her place of employment in the night season. The certified record of the proceedings pertinent to the decision which was filed in this court discloses two experiences, both in the night season, which might well form the basis of her concern. The first occurred a couple of years before when she was attacked by a man in her neighborhood and the second occurred when she was followed by a man in the vicinity of the plant when she worked on the second shift. Both the claims examiner of the Bureau of Unemployment Compensation and its **administrator found that the neighborhood in which appellant resides "is considered a bad neighborhood in the Cleveland area."** In common with many industrial areas, the neighborhood in which the employer's plant is located is not one in which in the darkness of the night the weak and timid would walk without some trepidation or the strong would venture without some vigilance.

Was appellant's reason for quitting compelling? Was it real not imaginary, substantial not trifling, reasonable not whimsical nor capricious? The attack which had been made upon her near her home and the subsequent experience of being followed near the plant had occurred at night. In the brightness of day she walked in safety to and from her home and her employer's plant but at the close of day there fell not quiet peaceful night but the night of Milton's Paradise Lost

"* * * * * * * * * when night
"Darkens the street, then wander forth the sons
"Of Belial, flown with insolence and wine."

In the opinion of this Court these occurrences most certainly have left their mark upon the claimant and are such as would normally cause a reasonable person to avoid the danger of recurrence. It readily appears that her reason for laying off was neither imaginary nor capricious and certainly it was not trifling. In view of the fact that she returned to work in June when daytime employment was again available, we are impelled to conclude that the reason was also genuine.

Did the appellant have good cause for quitting? Or did her action under these circumstances disqualify her as a recipient of benefits? Throughout the chapter of Ohio laws on the subject of unemployment compensation we find provisions protecting workers from being rendered ineligible for benefits for a refusal to accept new work. Among other reasons specified are the distance of the new place of employment from the worker's home, travel which involves more expense, and that the pay, the hours or the working conditions are below standard for the locality.

The safety of the worker from bodily harm, whether the attacker be bent upon rape, robbery or malicious mischief is much more important than any or all of the reasons so enumerated in the statute to preserve the worker's eligibility.

The Court holds it to be repugnant to the principles of American jurisprudence and offensive to belief in the DIGNITY OF MAN to place a higher value upon convenience than upon chastity or to appraise life and limb more cheaply than the cost of transportation.

Where the record discloses experiences undergone by an employee proceeding to and from her place of employment in the night season which experiences would cause a reasonable person to fear for her safety a bona fide refusal by such employee of a transfer from daytime employment to nighttime employment is justified and does not constitute quitting work without just cause.

Appellees, however, contend that there is not presented to this Court sufficient basis upon which a reversal of the deci-

sion of the Board of Review can be sustained. It is interesting to note that this contention was not made at the first hearing of this appeal but only at the second hearing and after the Court had announced its conclusion that the defendant did not quit work without just cause.

An examination of the decision of the Board of Review reveals that it considered the entire record when it denied plaintiff a further appeal. The record contained statements of the plaintiff of the reasons she refused the transfer to nighttime employment. These statements were made in connection with her application for benefits and in accordance with the provisions of the Unemployment Compensation Act. This act provides penalties for fraudulent misrepresentation or false statement in connection with such application. Therefore we must assume that the statements made in connection with plaintiff's claim for benefits were made with knowledge of the penalties attendant upon false claims and fraudulent representation. It is logical to assume that the Board of Review of the Bureau of Unemployment Compensation thus regarded these statements in the record. It may be urged that statements made under oath in an oral hearing have more probative value than those made in an application for benefits. That is probably, though not necessarily, true, depending in large measure upon the individuals making the statements. But these statements in the application are not without probative value and to recognize this it is not required that one adopt with Mr. Justice Holmes "the bad man" philosophy of the law i. e. that man is bad at heart and his obedience to law must be compelled by fear of punishment to the exclusion of the noble impulses which produce respect for law in the vast majority of people.

It is not difficult to conclude from a reading of the Board's decision that upon its examination and consideration of the entire record, the Board adjudged these circumstances and occurrences to be INSUFFICIENT IN LAW to constitute just cause for the claimant quitting her work.

Counsel for the appellees cite the case of General Motors Corporation v. Baker, et al, 110 N. E. 2nd, 12 as controlling. However, an examination of the facts in the Baker case and the instant case discloses an essential variance. In the Baker case,—the employer appeared at the time of the oral hearing and submitted evidence opposing the allowance of the claim. In the instant case the employer did not appear in opposition to the claim at the time assigned for oral hearing, from which it may fairly be inferred that the facts were not in dispute but only the legal effect thereof. In the Baker case, the court held that the employer, having been denied the right of cross

examination, had not had a fair hearing, and had not been accorded due process of law. In the instant case there was no denial of due process and the employer, not having appeared at the time set for the oral hearing, it is logically deduced that it did not wish to cross examine the claimant but was content to rest upon the insufficiency in law of the facts asserted by her.

It is the judgment of this Court that the decision of the Board of Review of the Unemployment Compensation is unreasonable and contrary to law, and it is reversed and a final judgment entered for the appellant.